LANDRY, Judge.
Defendant (Insurer) appeals from judgment decreeing Insurer liable on a policy of insurance issued on the life of Claray Smith, deceased, and rejecting Insurer’s contention that the policy application was admissible in evidence to prove material misrepresentation knowingly made by decedent with intent to defraud and which was of such character that Insurer would not have issued the policy had the true facts been known. The trial court declined to admit the policy application on the ground that it did not conform with La.R.S. 22:618A. Plaintiff-Appellee has answered the appeal praying for damages for Insurer’s alleged arbitrary and capricious refusal to pay, which claim was rejected by the trial court. We affirm the judgment in its entirety.
The material facts are undisputed. Subject policy was solicited of Decedent by David Schneider, Manager, Insurance Department, National Mortgage Company. The letter of solicitation contained the application for the policy issued Decedent. Pursuant to the application, a policy of Mortgage Cancellation Insurance, in the sum of $17,734.88, was issued by Insurer effective November 1, 1974. The application recites that Decedent had not received medical attention or medication for heart, kidney, or lung disease, cancer, diabetes, blood pressure or other serious illness during the last 5 years, and that Decedent was actively employed full-time or self-employed working at least 30 hours. Decedent died February 20, 1975. Demand for payment of $17,583.74, the amount due on the policy at the time of Decedent’s death, was made upon Insurer, whose refusal to pay within 60 days of demand brought about this litigation.
The record establishes beyond doubt that Decedent knowingly misrepresented the state of her health and the matter of her employment. In June, 1974, Dr. Philbert J. DeMarie, Surgeon, performed exploratory surgery on Decedent because of a jaundiced condition. The operation revealed cancer of the pancreas, which condition was concealed from Decedent upon the urging of her family. The deposition of Dr. DeMarie and the hospital record conclusively show that at this time Decedent was suffering from diabetes and had lost 20 pounds on a diabetic diet.
Dr. J. H. Kety, General Practitioner, testified that he knew Decedent who worked at the hospital. He stated that on numerous occasions, Decedent spoke to him in the hospital halls about her condition, and that Decedent visited his office on March 1, 1974, on which occasion her chief complaint was diabetes. Dr. Kety prescribed medication for diabetes and saw Decedent again on March 22, 1974, for diabetes. Decedent returned to Dr. Kety’s office on May 3, 1974, complaining of high blood pressure, for which condition medication was prescribed. In May, 1974, Decedent exhibited symptoms of jaundice for which she was eventually hospitalized in June. Following the surgery, Dr. Kety considered Decedent totally disabled because her condition worsened steadily. Dr. Kety encouraged Decedent to attempt work, but she stated that *1299 she did not feel well enough to work. Decedent was seen by Dr. Kety on September 4, 1974, approximately 2 weeks before the application for subject insurance was signed. At this time, he considered that Decedent was still deteriorating.
It is conceded that the policy document was forwarded Decedent in a jacket with the inscription “National Mortgage Company and affiliate National Insurance Agency, Inc.”, where normally the sender return address appears. The lower right hand corner of the jacket bears the notation “Underwritten by a member of Transamerica Corporation, Occidental Life of California”. The jacket also contained an address opening or window. In addition to the policy, the jacket contained a folded sheet of paper bearing Decedent’s name and address, folded so that Decedent’s name and address showed through the jacket window. The name sheet contained a photo-copy of Decedent’s application bearing her signature.
It is stipulated that the sheet containing Decedent’s name, address and photo-copy of her application for insurance “was folded in half and placed oh the inside of the cover of the certificate. It was not stapled, glued or otherwise physically attached to the policy or to the certificate of insurance. No other part of the policy document contains Decedent’s name.”
La.R.S. 22:618(A) provides:
“A. No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered. This provision shall not apply to policies or contracts of industrial insurance subject to R.S. 22:213(A)(1) and 22:259(2).”
Appellant maintains that the intent of the statute is met in this instance, even though the application was not physically attached to the policy and was not otherwise made part thereof. Simply put, Appellant contends that without the application, there is no policy, because the policy document itself does not name an insured.
We reject Appellant’s argument that without the application there would be no policy because of the lack of a named insured in the policy document. In its answer to plaintiff’s petition, Appellant expressly admits having issued the policy to Decedent, and defends this action solely on the ground of misrepresentation in the policy application. We find that the language of Appellant’s answer constitutes a judicial admission that the policy was issued to Decedent in the amount demanded herein. Having solemnly asserted the existence of the policy as the basis for its position that the application was falsified, Appellant may not change its position. La.C.C. Article 2291; Lavigne v. Louisiana Railway and Navigation Company, 9 La.App. 509, 121 So. 251 (2d Cir. 1928).
Citing Smith v. North American Company for Life, Accident and Health Insurance, 306 So.2d 751 (La.1975), Appellant maintains that the statute’s purpose is to make certain that the document the insured has in his possession during his lifetime and his beneficiary has after his death shall be evidence of the entire insurance contract. According to Appellant, this purpose was met herein because the application accompanied the policy and was in the possession of the insured at her death.
Appellee maintains, however, in Spain v. Travelers Insurance Company, 332 So.2d 827 (La.1976) and Fisette v. Mutual Life Ins. Co., 162 La. 620, 110 So. 880 (1926), that the Supreme Court interpreted the applicable statute to mean that the application must be physically attached to or otherwise physically made part -of the policy to afford an insurer a defense predicated upon misrepresentations in the application.
In Spain, the court observed:
“In Fisette v. Mutual Life Ins. Co., 162 La. 620, 110 So. 880 (1926) we emphatically held that The Entire Contract Policy Statute must be construed literally so as to require actual physical attachment of the insured’s application to the policy when issued in order to avail the insurer *1300 of a defense thereon. The opinion lucidly explained the purpose of the statute:
‘ * * * The language of the statute is plain and vigorous in its requirement that every life insurance policy shall contain the entire contract between the parties; that nothing shall be incorporated therein by reference to the. application or any other document unless the same is indorsed upon or attached to the policy; . The purpose of the law is that the insured shall have in his possession during his lifetime, and that the beneficiary shall have after the death of the insured, the entire evidence of the contract. . . . ’ ”
Appellant suggests the inapplicability of Spain because it reputedly dealt with a different statute, namely, La.R.S. 22:628, which Appellant claims is worded differently. Additionally, Appellant contends that Spain was legislatively abolished by Act 150 of 1976.
La.R.S. 22:618(A) is, in effect, our Insurance Code version of Act 227 of 1916, known as the Entire Contract Policy Statute, which is discussed in some detail in Spain. The purpose of the statutory requirement is to eliminate all question as to what constitutes the entire insurance contract. Although Act 227 of 1916 was originally restricted to life policies, the purposes, aims and concepts thereof were made applicable to many other types of policies by the Louisiana Insurance Code. Act 195 of 1948, as amended by Act 125 of 1958. Spain.
We can see valid reason for the interpretation requiring actual physical attachment of the application to the policy or otherwise making the application part of the policy. An application actually physically attached to a policy is more likely to be available after the death of an insured because it is less likely to be lost or misplaced by the insured during his or her lifetime.
While it is true that a copy of the application was sent with the policy in question, this does not meet the requirement that it be physically attached to the policy. Failing in this respect, Appellant may not invoke the application in defense of the claim thereon.
La.R.S. 22:656 provides for the imposition of penalties and attorney’s fees for failure to pay a claim on a life insurance policy within 60 days of receipt of proof of death, without just cause. The test of whether the insurer’s failure to pay is without just cause is the reasonableness of the insurer’s defense under the circumstances of each case. Mistric v. Republic National Life Insurance Company, 314 So.2d 472 (La.App. 1st Cir. 1975); Boudreaux v. First National Life Insurance Company, 225 So.2d 687 (La.App. 3d Cir. 1969).
The trial court denied Appellee’s claim for penalties and attorney’s fees. In so doing, the court necessarily found that Appellant was justified in thinking he had a reasonable defense to this action. We find no manifest error in that conclusion.
The judgment is affirmed at Appellant’s cost.
Affirmed.