368 So.2d 1032 (1979)
Lunder S. JOHNSON, Administrator of Succession of Claray Smith
v.
OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA.
No. 63129.
Supreme Court of Louisiana.
March 5, 1979.
Rehearing Denied April 9, 1979.
*1033 Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendant-applicant.
Edward A. Griffis, E. B. Dittmer, II of Talley, Anthony, Hughes & Knight, Bogalusa, for plaintiff-respondent.
PIKE HALL, Jr.,[*] Justice Ad Hoc.
The Administrator of the Succession of Claray Smith brought suit against the defendant insurer seeking to recover $17,583.74 under a mortgage cancellation life insurance policy issued to the decedent. Defendant resisted payment on the ground that the application for insurance contained material misrepresentations made by decedent with the intent to deceive the insurer. The trial court found the application inadmissible under La.R.S. 22:618(A) because it was not physically attached to the insurance certificate and granted judgment in favor of plaintiff. The court of appeal affirmed. Johnson v. Occidental Life Insurance Company of California, 361 So.2d 1297 (La.App. 1st Cir. 1978). Writs were granted *1034 to review the correctness of this ruling. 363 So.2d 1386 (La.1978). We reverse and render judgment in favor of defendant.
On September 17, 1974 Mrs. Smith, in response to a mail solicitation from the insurance company, filled out and signed an application for mortgage cancellation group life insurance which contained the following representations:
"I REPRESENT THAT: (1) I have not reached my 60th birthday. (2) I am not confined to a hospital, rest home, sanitarium nor my home due to illness. (3) I have not had medical attention or medication for heart, kidney or lung disease, cancer, diabetes, blood pressure or other serious illness during the last 5 years. (4) I am actively full time employed or self employed working at least 30 hours a week. (5) I hereby authorize any physician or other person who has attended or examined me to disclose or testify to any knowledge or information thus acquired.
I agree that these representations shall form the basis for any insurance granted on this application. . ."
On November 1, 1974 the certificate of insurance was forwarded to Mrs. Smith. It was stipulated at trial that a copy of the application form was folded in half and placed on the inside of the cover of the certificate; however, it was not stapled, glued or otherwise physically attached to the certificate. Following Mrs. Smith's death on February 20, 1975, the succession administrator found the certificate of insurance and application form in decedent's personal effects. He testified he found the application folded and placed inside the jacket.
The document issued to decedent is like a pamphlet with a heavy paper cover or jacket. The cover contains the name of the company and is labeled "Certificate of Group Credit Life Insurance". Stapled inside the cover are several pages containing the certificate provisions, commencing with the following statement: "This certificate is issued to the Debtor named on the attached application, which is made a part of the Certificate, as evidence of credit life insurance which is provided under Group Policy No. 8889P, issued by the Company to National Mortgage Company (herein called the Policy holder), and which relates to the contract of indebtedness identified by the account number specified in the application. The insurance is granted subject to the Debtor's representations in the application." One side of the cover contains a sleeve on the inside into which the copy of the folded application was placed, similar to the pocket part of a law book. That same side of the cover also has an opening or window through which appears the name and address of decedent which was typed on the application form. Also typed or written on the copy of the application is the account number, present loan balance, amount of insurance, effective date, monthly charge for $1,000 of insurance, and the monthly premium. None of this information including the insured's name appears any where else in the certificate except on the application form contained within the cover as described.
Evidence adduced at trial through medical records and depositions of doctors showed that Mrs. Smith had a long history of diabetes for which she frequently sought medical attention. In June of 1974 exploratory surgery was performed on her because of a jaundiced condition and it was discovered she had terminal cancer of the pancreas. This condition was concealed from her by her family. According to the testimony of her son and one doctor, Mrs. Smith did not return to work after the surgery in June because she did not feel well enough. She continued to see the doctor. She re-entered the hospital in February of 1975 and died on February 20. The death certificate states that her diabetic condition contributed to her death.
In rendering judgment in favor of plaintiff the lower courts held that the defendant insurance company was precluded from raising the defense of material misrepresentations in the application for insurance because the application was not "physically attached" to the certificate of insurance within the terms of La.R.S. 22:618(A). That statute provides, in pertinent part:

*1035 "A. No application for the issuance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered. This provision shall not apply to policies or contracts of industrial insurance subject to R.S. 22:213A(1) and 22:259(2)." (emphasis added)
The lower courts' determination that the placement of the application in the jacket along with the certificate of insurance was an insufficient attachment for purposes of this statute was based upon decisions of this court dealing with the "entire contract policy" statutes. In our view the lower courts erred in concluding that this jurisprudence stands for the proposition that under La.R.S. 22:618 an application must be physically attached to the policy through staples, glue, paper clips, or the like.
In Spain v. Travelers Insurance Co., 332 So.2d 827 (La.1976) the question before this court was whether, under La.R.S. 22:628, an exclusionary clause in a primary policy would apply to an excess policy by virtue of a clause in the latter which stated that "The provisions of the immediate underlying policy are incorporated as a part of this policy . . .". Thus, this case did not present a question concerning what mode of attachment would be sufficient but instead dealt with the question of whether the doctrine of incorporation by reference was applicable. In rejecting this notion, this court discussed various statutes in the insurance code, one being La.R.S. 22:618, which require that applications, by-laws or other instruments be attached to the policy to be effective. The salutary purpose of these statutes is that the insured during his lifetime, and the beneficiary after the death of the insured, shall have in their possession at all times the entire evidence of the insurance contract.
In Spain we cited with approval Fisette v. Mutual Life Ins. Co., 162 La. 620, 110 So. 880 (1926) for the proposition that "[t]he Entire Contract Policy Statute must be construed literally so as to require actual physical attachment of the insured's application to the policy when issued in order to avail the insurer of a defense thereon." 332 So.2d at 832.
A reading of Fisette shows that it dealt with a situation in which no copy of a required application for the establishment of the policy accompanied the policy. Thus, Fisette, like Spain, did not deal with a question concerning the sufficiency of a certain manner of attachment. Accordingly, we conclude that the lower courts erred in relying on these cases for the proposition that the placement of the application within the certificate cover was not a sufficient attachment for purposes of La.R.S. 22:618.
The statute requires that the application be "attached to or otherwise made a part of the policy." A major principle of statutory construction is that courts should interpret statutes in such a manner as to avoid unintended or absurd results. State v. Booth, 347 So.2d 241 (La.1977); Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681 (1970); Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (1946). By placement of the application containing the decedent's name and other essential data inside of the certificate cover in a sleeve provided for that purpose, the application was attached to or otherwise made a part of the certificate within the meaning of the statute. The purpose of the statute, to assure that the insured is in possession of the entire contract, was unquestionably fulfilled. Accordingly, the application was admissible in evidence in connection with the insurer's defense of material misrepresentations.
Having determined that the application is admissible, we turn to the merits of the defense which is governed by La.R.S. 22:619(B):
"B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such *1036 statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." (emphasis added).
Under this statute, as interpreted by this court in Gay v. United Benefit Life Insurance Co., 233 La. 226, 96 So.2d 497 (1957), the insurer must prove that the applicant's false statements were made with the intent to deceive and that they materially affected the acceptance of the risk or the hazard assumed by the insurer. See also Brown v. National Old Life Ins. Co., 345 So.2d 1023 (La.App. 2d Cir. 1975); writ denied 347 So.2d 255 (La.1977); Watson v. Life Insurance Co., of La., 335 So.2d 518 (La.App. 1st Cir. 1976); Parfait v. Minnesota Mutual Life Ins. Co., 311 So.2d 558 (La. App. 4th Cir. 1975), writ denied 313 So.2d 847 (La.1975); Trahan v. Security Life and Trust Co., 199 So.2d 617 (La.App. 3d Cir. 1967).
The record establishes that decedent made several false representations when she signed the application. She had a long standing diabetic condition and had recently undergone exploratory surgery. Moreover, she ceased working several months prior to signing the application. The trial court made no findings of facts in this respect, but the Court of Appeal correctly found the facts as follows:
"The record establishes beyond doubt that Decedent knowingly misrepresented the state of her health and the matter of her employment. In June, 1974, Dr. Philbert J. DeMarie, Surgeon, performed exploratory surgery on Decedent because of a jaundiced condition. The operation revealed cancer of the pancreas, which condition was concealed from Decedent upon the urging of her family. The deposition of Dr. DeMarie and the hospital record conclusively show that at this time Decedent was suffering from diabetes and had lost 20 pounds on a diabetic diet.
Dr. J. H. Kety, General Practitioner, testified that he knew Decedent who worked at the hospital. He stated that on numerous occasions, Decedent spoke to him in the hospital halls about her condition, and that Decedent visited his office on March 1, 1974, on which occasion her chief complaint was diabetes. Dr. Kety prescribed medication for diabetes and saw Decedent again on March 22, 1974, for diabetes. Decedent returned to Dr. Kety's office on May 3, 1974, complaining of high blood pressure, for which condition medication was prescribed. In May, 1974, Decedent exhibited symptoms of jaundice for which she was eventually hospitalized in June. Following the surgery, Dr. Kety considered Decedent totally disabled because her condition worsened steadily. Dr. Kety encouraged Decedent to attempt to work, but she stated that she did not feel well enough to work. Decedent was seen by Dr. Kety on September 4, 1974, approximately 2 weeks before the application for subject insurance was signed. At this time, he considered that Decedent was still deteriorating."
In determining whether the statements were made with the intent to deceive the insurer, we are guided by the opinion of Judge (now Justice) Blanche in Watson v. Life Ins. Co. of La., 335 So.2d 518 (La.App. 1st Cir. 1976):
"Strict proof of fraud is not required to show the applicant's intent to deceive, because of the inherent difficulties of proving one's intent. The intent to deceive must be determined from the attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentations." (citations omitted)
As evidenced by medical records introduced at trial and the deposition of one doctor, the decedent was well-aware of her diabetic condition. She was also certainly aware that she had recently undergone surgery after which she could not and did not *1037 return to work. Considering the number and nature of the misrepresentations and the decedent's knowledge of this falsity the reasonable assumption is that she recognized the materiality of the misrepresentations and that there was an intent to deceive.
Plaintiff argues that the solicitation letter which emphasized the availability of the insurance coverage without physical examination and the application form which did not require the decedent to consciously answer specific questions concerning her health weigh against a finding that she was aware of the significance of the representations contained in the application.
The representations in the application form contain a bold face heading, are not hidden in fine print, and it is stated that the representations shall form the basis for any insurance granted on the application. The solicitation letter advises that the applicant's signature on the application is necessary to show the applicant is qualified for the insurance. The solicitation letter and application are not misleading and fairly and reasonably inform the applicant of the representations and their materiality.
An underwriting manager for the credit division of the insurer testified that an application for the type of insurance purchased by decedent is automatically declined if the applicant indicates he has diabetes or other serious health problems. According to the witness, this type of policy cannot be issued at higher rates in the event the applicant indicates health problems. If an applicant states he is not presently employed the company conducts an investigation to determine the cause of unemployment. This uncontradicted testimony establishes that the misrepresentations made in this case were material since they had a direct bearing on the company's decision to accept the risk. Thus, we conclude that the company may void the policy because of the misrepresentations made by decedent.
For the reasons assigned the judgment below in favor of plaintiff is reversed and set aside. Judgment is rendered rejecting plaintiff's demands, at plaintiff's costs.
NOTES
[*] Judge Pike Hall, Jr., Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.