Dr. Martin MANZELLA, Jr., Plaintiff–Appellant,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 88–3586
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 4, 1989.

Mack E. Barham, Robert E. Arceneaux, Barham & Churchill, New Orleans, La., for plaintiff-appellant.

Wood Brown, III, Richard E. McCormack, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendant-appellee.

Before RUBIN, GARWOOD and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

An insurance company denied a dentist disability payments due to his misrepresentations of material facts on his insurance application. The dentist contends that (1) while his application contained misrepresentations, the insurance broker was an agent of the insurance company and the company is bound by the broker's alleged knowledge of them; and (2) the facts he misrepresented were not material because they were not "objectively relevant." The district court found these arguments to be without merit. As the district court's fact findings are supported by the record and it applied correct legal principles, we affirm.

I.

In response to a solicitation from Charles Edwards, an employee of Omni Group, Dr. Martin Manzella purchased a $4,000 monthly disability-income policy from The Paul Revere Life Insurance Company in 1985. Omni Group is a broker which sells insurance to its clients from several different companies. When filling out the Paul Revere application, Manzella informed Edwards that he had existing disability insurance with Union Mutual, providing benefits of $1,200 a month, and with Commercial, providing benefits of $6,000 a month. Edwards explained that if Manzella obtained additional insurance he would be "overinsured" according to Paul Revere's underwriting guidelines. Manzella agreed to "drop" his Commercial coverage and have Edwards later "rewrite" it so that he could obtain insurance from Paul Revere.

In filling out the Paul Revere application, Manzella did not disclose that he also had a disability policy with Provident providing coverage of $3,500 per month. Manzella allegedly informed Edwards of the existence of his Provident policy three months after filling out the Paul Revere application, but Edwards did not reveal to Paul Revere either this information or the information about the Commercial policy.

In addition, on the Paul Revere application Manzella represented his income for each of the past three years as having been $120,000, although he had reported annual earnings of approximately $50,000 on his federal income tax returns for those same three years.

In May 1986, Manzella was blinded when some amalgram filling exploded in his eyes. He filed claims for disability with Union Mutual, Commercial, Provident, and Paul Revere, but in his Paul Revere claim he denied the existence of any other policies. After investigating Manzella's disability claim, agents for Paul Revere discovered his misrepresentations and told Manzella that they knew that he had other coverage. Manzella then admitted that he had two other policies but continued to conceal the existence of his Provident policy. At that time he was receiving benefits from Provi-

dent and he had also failed to disclose in his claim to Provident that he was receiving disability benefits from Paul Revere. Upon confirmation from Provident that Manzella's coverage with Provident predated his application to Paul Revere, Paul Revere stopped payment on his claim.

Manzella sued to recover the remainder of his alleged coverage, and Paul Revere filed a counter-claim to recover the $49,-766.82 it had paid Manzella before it discovered the misrepresentations on his application.

## II.

Whether Edwards' knowledge is imputed to Paul Revere depends upon his legal status with respect to that company. An insurer is bound by its agent's actions and knowledge of the agent is imputed to the insurer, but an insurer is not charged with the same responsibility for the acts of independent brokers who are not its agents in a legal sense.[1]

Under Louisiana law, which is applicable in this diversity-jurisdiction case, the distinction between insurance agent and broker is drawn in this fashion:

(a)n insurance agent is a person expressly or impliedly authorized to represent an insurance company in dealing with third persons in matters relating to insurance. An "insurance agent" is tied to his company ... whereas an "insurance broker" is an independent middleman not tied to a particular company....[2]

A Louisiana appellate court explained this distinction:

Insurance agents are persons employed by the insurance company to solicit risks and effect insurance. Insurance brokers solicit insurance from the public under no employment from any special company, placing the insurance with any company selected by the insured, or, fail-

ing such selection, by the broker himself[3].

■ The evidence presented at trial established that Edwards and Omni acted as brokers, not as agents of Paul Revere, in obtaining the Paul Revere policy for Manzella. Edwards was employed by Omni, a group of brokers who provided disability insurance to clients from several different companies. Edwards testified that he considered Manzella to be "his client." After Manzella became disabled, Edwards aided Manzella in making claims to the various disability insurers. Edwards acted in Manzella's best interest at all times, including the "drop and rewrite" scheme he executed with Manzella's Commercial policy. These actions support the district court's conclusion that Edwards and Omni were "independent middlemen."

Manzella relies on a decision of the Louisiana Supreme Court, *Tiner v. Aetna Life Ins. Co.*,[4] which held that a broker is deemed to be an agent of an insurer as a matter of law under certain circumstances. In *Tiner*, however, correct information had been given by the applicant with no intent to deceive. The *Tiner* court held that the broker was acting as an agent because the broker misrepresented information while the plaintiff was relying on his expertise. In contrast, Manzella, apparently acting in concert with Edwards, knowingly misrepresented material facts, and the "circumstances" of this case therefore did not require the district court to find that Edwards was Paul Revere's agent.

A Louisiana statute provides that the falsity of a statement in an application for insurance does not bar the insured's right to recover "unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."[5] Louisiana courts have

---

1. *Karam v. St. Paul Fire & Marine Ins. Co.*, 265 So.2d 821 (La.App. 3d Cir.1972), *affirmed on other grounds*, 281 So.2d 728 (La.1973).

2. 15 *Appleman, Insurance Law and Practice*, Section 8725.

3. *Raymond v. Zeringue*, 422 So.2d 534, 536 (La. App.1982).

4. 291 So.2d 774 (1974).

5. LSA–R.S. 22:619.

not interpreted this statute to mean that both components must be present, but rather, that materiality is determined by *either* the acceptance of the risk *or* the hazard assumed by the insurer.[6] In order for the applicant's misrepresentations to be material, therefore, it is not necessary that they increase the underwriting risk involved so long as they affect the decision of the insurer to issue the policy.

■ Manzella's misrepresentations in this case did not affect the hazard assumed —that is, they did not increase the risk that he would become disabled. The misrepresentations did, however, affect the acceptance of the risk because undisputed evidence at trial showed that Paul Revere would not have issued the coverage if it knew that Manzella had disability coverage with Provident and that his earned income was significantly less than he had reported. Paul Revere offered evidence that it declined overinsurance because an overinsured person has a strong inducement not to return to work in any capacity when his disability benefits pay more than he would earn when working. Indeed, Manzella, who had reported income when working of $50,000 a year, received more than $360,000 in insurance benefits in the year following his accident.

The application Manzella signed stated that his answers must be true and complete and that Paul Revere would rely on these answers in determining coverage. It is not necessary, as Manzella contends, that a "red flag" be raised when an insurance company asks a question in order to determine a material fact. There are no "classes" of misrepresentations that are permissible merely because an applicant has not been specifically instructed to tell the truth.

■ Indeed, Manzella was aware that knowledge of his other disability policies was material to Paul Revere because Edwards informed him that Paul Revere's issue-and-participation limits prevented him from being overinsured. This is the reason

Manzella agreed to drop his Commercial coverage and have Edwards rewrite it after he had been accepted by Paul Revere. Manzella understood that, since he was continuing his Union Mutual coverage, he would quality for Paul Revere coverage only if his income was as high as he had reported and he had no other coverage in force. Manzella's participation in the Commercial "drop and rewrite" scheme shows that he realized the materiality of his other disability coverage in Paul Revere's decision to insure him and that he misrepresented information with the requisite "intent to deceive."

The evidence at trial refutes Manzella's assertion that his misrepresentations were "mere oversight." Manzella had disability insurance with Provident dating back to 1975 and had upgraded his policies in 1980. He had received annual premium notices from Provident and had paid the policy premiums every year. He personally paid the premiums on his two Provident policies eight months before applying to Paul Revere for coverage. He listed his Provident insurance on an application to Commercial for a business overhead policy less than six months before applying to Paul Revere, as well as on every other disability insurance application he executed before and after applying to Paul Revere. These actions show clearly Manzella's intent to deceive Paul Revere by keeping his Provident policy a secret, rather than mere forgetfulness on his part.

As for Manzella's intent to deceive Paul Revere about his income, he alleges that he included "perks" in his income estimate on the application which asked for "earned income" rather than income as specified on tax returns. It is unlikely that such perks would more than double his salary, however, and Manzella also listed the inflated income on Paul Revere's financial supplement which specifically asked for income as reported on federal tax returns.

Manzella further demonstrated his appreciation of the materiality of his misrep-

---

6. *Johnson v. Occidental Life Ins. Co. of Calif.*, 368 So.2d 1032 (1979); *Jones v. United States* *Life Ins. Co.*, 486 So.2d 1110 (La.App.1986).

resentations by perpetuating his deception when filling out his disability claims. After he had become disabled, Manzella deliberately attempted to keep both Paul Revere and Provident ignorant of the existence of his insurance coverage with the other. Manzella's allegation that he did not remember his Provident coverage is refuted by the fact that he was receiving monthly benefits from Provident and that he had failed to list his Paul Revere coverage on the Provident claim forms. Manzella continued to deny the existence of his Provident policy even when specifically questioned by Paul Revere agents. His failure to disclose his Provident coverage provided compelling evidence of his intent to deceive Paul Revere.

For these reasons, the judgment is AFFIRMED.