593 So.2d 798 (1992)
LOUISIANA STATE BOARD OF MEDICAL EXAMINERS
v.
Emile A. BERTUCCI, Jr., M.D.
No. 91-CA-0522.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1992.
*799 Lawrence J. Smith, Glen Patrick McGrath, Lawrence J. Smith & Associates, New Orleans, for plaintiff/appellee.
Louis C. LaCour, Jr., Joey C. Marullo, L. Thomas Styron, Adams & Reese, New Orleans, for defendant/appellant.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
This appeal arises out of a judgment of the Civil District Court of Orleans Parish reversing the September 14, 1989 ruling of the Louisiana State Board of Medical Examiners (Board) which found Dr. Emile A. Bertucci, Jr. guilty of sixteen (16) counts of violating the Louisiana Medical Practice Act.[1]
PROCEDURAL HISTORY:
On January 19, 1989, Dr. Bertucci was charged by the Board in Administrative complaint No. 89-A-006 with violations of Louisiana Revised Statute 37:1285(A)(6), (12) and (14), relative to prescribing, dispensing or administering legally controlled substances without legitimate medical justification therefore, or in other than a legal or legitimate manner; professional and medical incompetency; and, continuing or recurring medical practices which fail to satisfy the prevailing and usually accepted standards of medical practice in the state. The administrative complaint contained specific allegations regarding individual patients and the medications prescribed by Dr. Bertucci.
On February 6, 1989, Dr. Bertucci was served with the complaint and a notice of hearing scheduled for March 24, 1989. Thereafter, Dr. Bertucci, through his counsel of record, propounded twelve (12) requests for production of documents and ten interrogatories.
The hearing initially set for March 24th was subsequently continued to April 14, 1989 and again continued to May 25, 1989 on motion of Dr. Bertucci. On May 19, 1989, Dr. Bertucci propounded three additional interrogatories to the Board. When the Board deposed Drs. James and Byars on May 23, 1989, Dr. Bertucci was represented by counsel.
Following the administrative hearing on May 25, 1989, the Board concluded that Dr. Bertucci had prescribed "controlled substances to patients without legitimate medical *800 justification" and demonstrated "medical incompetency and continuing and recurring medical practice failing to satisfy the prevailing and usually accepted standards of medical practice in this state." Accordingly, the Board ordered Dr. Bertucci's license suspended for four years with a probationary reinstatement after the first six months of suspension, subject to specific probationary terms, conditions and restrictions. In addition, Dr. Bertucci was ordered to pay a fine of $5,000.00 over a four year period from the date of the Board's decision.
Following the Board's decision, Dr. Bertucci petitioned for rehearing alleging, inter alia, that he was not afforded an opportunity to show compliance with the lawful requirements of retaining his license pursuant to Louisiana's Administrative Act, particularly Revised Statute 49:961(C). The Board denied Dr. Bertucci's application for rehearing. Dr. Bertucci then appealed for review to the Civil District Court of Orleans Parish.
ACTION OF THE TRIAL COURT:
In his Petition For Review, Dr. Bertucci again alleged, inter alia, that he was not afforded the opportunity to show compliance as required by Revised Statute 49:961(C).
Following a hearing on October 5, 1990, the trial court reversed the Board's decision suspending Dr. Bertucci's license. In his written reasons for judgment, the trial judge stated:
"Section 961 outlines in detail the procedure to be followed before revocation or suspension of a medical license and is an additional step to be taken by the agency. When read with Section 955, which deals with hearings in general it appears that respondent has not been allowed the opportunity to bring himself into compliance with the requirements imposed by the Agency so as not to lose the license. The decision of the Board is therefore reversed for failure to comply with the mandatory procedure required."
The Board appeals the trial court's decision asserting Dr. Bertucci was afforded an opportunity to show compliance pursuant to the clear meaning of Revised Statute 49:961(C). Dr. Bertucci argues that the statute requires he be given an opportunity, prior to formal proceedings being instituted, to show compliance.
We agree in principle with part of Dr. Bertucci's position, however under the facts of the instant case we reverse and remand for further proceedings on the merits.
ADMINISTRATIVE PROCEDURE ACT
Louisiana's Administrative Procedure Act (the Act) provides that in any adjudication proceeding all parties who do not waive their rights shall be afforded an opportunity for a hearing after reasonable notice. La.R.S. 49:955(A). "`Adjudication' means agency process for the formulation of a decision or order." La.R.S. 49:951(1). All parties have the opportunity to respond, to present evidence and argument, as well as conduct such cross-examination as may be required for a full and true disclosure of the facts. La.R.S. 49:955(C).
Revised Statute 49:961 sets forth the requirements when the agency process involves licensing. Subsection A requires that "[w]hen the grant, denial or renewal of a license is required to be proceeded by notice and opportunity for hearing, the provisions of this Chapter concerning adjudication shall apply." If the agency proceedings involve the revocation, suspension, annulment or withdrawal of a license Subsection C is controlling. It provides, in pertinent part:
"No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license."
A reasonable interpretation of the statutory scheme of the Act is that in any adjudication proceeding notice and an opportunity to be heard (i.e. present evidence, cross-examine witnesses, etc.) are required. These are the basic elements of procedural due process. The same adjudication requirements are necessary when an agency requires notice and hearing before it will *801 issue, deny or renew a license. However, with respect to the suspension, revocation, annulment or withdrawal of an existing license, it is apparent that Subsection (C) requires an additional step. That is, the agency must give the licensee[2] an opportunity, prior to the institution of formal proceedings, to show that the actions complained of do not violate the law or agency rules. Although we do not hold that due process necessarily requires this additional step, we do conclude that it was the legislature's intent to provide this additional requirement in the limited circumstances set forth in subsection (C).[3] Otherwise, there would have been no purpose in enacting the statute since notice and opportunity to be heard is fundamental in all agency adjudications. La.R.S. 49:955.
We disagree, however, with Dr. Bertucci's conclusion concerning the results of the additional step. He argues that if given the opportunity he would have satisfied the Board that he was now complying with the law. That is, he suggests that even if his prior actions were violations, his agreement to not carry on the activities in the future would have precluded the Board from proceeding further and that would have ended the matter. This is erroneous.
The purpose of the additional compliance opportunity of subsection (C) is to "short circuit" the procedure. That is, the statute gives the licensee the opportunity to show, informally, that the complaint against him is unfounded and that formal proceedings should not be instituted. It is apparent that the legislature intended that those persons already holding valid licenses be given this opportunity before they are compelled to participate in a formal adversarial hearing. We find no intent in this procedure, however, to excuse past violations. Dr. Bertucci's interpretation would lead to the absurd result that no violation, no matter how egregious, would be subject to disciplinary action. It is fundamental that statutory interpretation should not lead to absurd results. Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032 (La.1979); Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681 (1979); City of New Orleans v. New Orleans Public Service, Inc., 471 So.2d 233 (La.App. 4th Cir.1985), writ den. 472 So.2d 22 (La.1985).
Despite our agreement in principle with at least part of Dr. Bertucci's argument, we still reverse and remand for full judicial review pursuant to R.S. 49:964.
In brief, Dr. Bertucci asserts that he first objected to the Board's failure to comply with R.S. 49:961(C) in his rehearing application, after the formal hearing and the Board's decision. Prior to that time, he had fully participated in the pre-hearing discovery, as well as the hearing itself without raising the objection. He was represented by counsel at all times. We conclude that Dr. Bertucci's failure to object constitutes a waiver of his right to the additional procedural step of R.S. 49:961(C). The objection, had it been interposed timely, is one of prematurity which is waived if not timely made. See, La.C.C.P. Art. 926. Furthermore, the record does not show, nor does Dr. Bertucci point out, how he was prejudiced by the Board's failure to give him the opportunity to show compliance prior to the formal hearing. Under these circumstances, it would be useless to require the Board to give Dr. Bertucci the additional opportunity after it has already held a formal hearing and rendered its decision.
Accordingly, we reverse and remand for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] La.R.S. 37:1285.
[2] Use of the term "licensee" clearly suggests that subsection (C) applies to those situations where a license has already been issued and is still in effect.
[3] We are mindful of the contrary holding in the Georgia case of Hinson v. Georgia State Board of Dental Examiners, 135 Ga.App. 488, 218 S.E.2d 162 (Ct. of App.; Div. 1, 1975), however we do not consider it controlling. Furthermore, there is no discussion in that opinion of a statute similar to La.R.S. 49:955.