413 So.2d 364 (1982)
Eza S. ROZAS, Plaintiff-Appellant,
v.
LA. HOSPITAL SERVICE, INC. et al., Defendants-Appellees.
No. 8785.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
Guglielmo & Lopez, James C. Lopez, Opelousas, for defendants-appellees.
Before GUIDRY, CUTRER and STOKER, JJ.
GUIDRY, Judge.
Plaintiff, Eza S. Rozas, instituted this action against the defendant, Louisiana Hospital Service, Inc., (Blue Cross of Louisiana and/or Louisiana Health Service and Indemnity Company), to recover certain hospital and medical insurance benefits as well as penalties and attorney's fees. Defendant answered plaintiff's petition generally denying liability and alleging that certain *365 exclusionary riders, made a part of plaintiff's insurance policy issued by defendant, excluded coverage of plaintiff's illness. The trial court concluded that plaintiff was not entitled to such insurance benefits since the aforesaid riders were made a part of the policy in dispute and plaintiff suffered from an illness specifically excluded from coverage by such riders. Plaintiff appeals from that judgment.

FACTS
On October 2, 1979, plaintiff experienced a severe headache and dizziness. She immediately consulted with her long-time family physician, Dr. Charles Aswell. Dr. Aswell examined plaintiff, conducted an initial diagnostic procedure known as a lumbar puncture, and thereafter transferred Mrs. Rozas to Our Lady of Lourdes Hospital in Lafayette, Louisiana. Upon her arrival at the hospital emergency room, Mrs. Rozas was examined by Dr. Stephen I. Goldware, a neurosurgeon. Dr. Goldware's examination revealed that plaintiff was neurologically normal, although she had a stiff neck and her blood pressure was "sky high". Dr. Goldware diagnosed plaintiff's problem as a brain hemorrhage. He subsequently ordered that an arteriogram be conducted as well as a CT Scan. The aforesaid diagnostic procedures revealed two aneurysms on plaintiff's right internal carotid artery, and also, a large right-sided blood clot in the temporal area. On October 5, 1979, Dr. Goldware removed the blood clot from plaintiff's brain. Thereafter, plaintiff remained in the hospital until discharged on December 9, 1979.
Dr. Goldware's bill for surgery, evaluation, and admission was submitted for payment to the defendant on October 10, 1979. Thereafter, on January 31, 1980, the defendant received documents reflecting the hospital portion of plaintiff's medical expenses. The defendant paid the bill submitted by Dr. Goldware, however, rejected payment of the hospital invoice based upon the aforesaid exclusionary provisions. This suit followed.
At trial the parties stipulated that the plaintiff was insured by defendant and that the policy introduced into evidence by both parties was in full force and effect at the time of plaintiff's illness. Although the standard form policy issued to plaintiff provides insurance benefits for certain hospital and medical expenses including medical and hospital expenses resulting from surgery for "intercranial aneurysm; intercranial approach", the record reflects that two exclusionary riders were physically attached to plaintiff's application for insurance which was placed inside the policy along with various endorsements pertaining to the insurance agreement existing between the parties. The aforesaid riders provided as follows:
"IT IS AGREED that the above Contract, including all riders and endorsements, if any, to which this Rider is attached, shall provide no benefits from the above Effective Date for care or treatment rendered to:

ROZAS, EZA S. 
for the following illness(s) and/or condition(s), including conditions resulting therefrom:
 Any disease of cerebro-vascular 
 system; treatment for and 
 complications therefrom "
"IT IS AGREED that the above Contract, including all riders and endorsements, if any, to which this Rider is attached, shall provide no benefits from the above Effective Date for care or treatment rendered to:

 ROZAS, EZA S. 
for the following illness(s) and/or condition(s), including conditions resulting therefrom:
 Abnormal blood pressure; 
 treatment for and complications 
 therefrom "
The issues presented on appeal are:
(1) Did the trial court err in concluding that the riders excluding coverage were a part of the policy although not physically attached to the same?
*366 (2) Did the trial court err in concluding that plaintiff's illness was a disease of the cerebro-vascular system?
(3) Did the trial court err in failing to conclude that the policy at issue was ambiguous, and therefore, should be construed in favor of the plaintiff?
(4) Did the trial court err in failing to conclude that payment by defendant of Dr. Goldware's bill for services rendered constitutes an admission of liability on part of the defendant, and thus, estops the defendant from refusing to pay the hospital portion of plaintiff's medical expenses?
(5) Did the trial court err in failing to award penalties and attorney's fees to plaintiff?
Plaintiff contends that the riders allegedly made a part of the insurance policy in dispute are of no effect in excluding coverage since the riders were not physically attached to the policy. In support of her argument, plaintiff refers this court to the case of Spain v. Travelers Insurance Co., 332 So.2d 827 (La.1976). Although a literal reading of the decision in Spain seems to lend support to appellant's argument, our Supreme Court in the later case of Johnson v. Occidental Life Insurance Co. of California, 368 So.2d 1032 (La.1979) indicated clearly that a rider, to be effective, need not necessarily be physically attached to the policy through staples, glue, paper clips or the like but rather the intent of the statutes (LSA-R.S. 22:618 and 22:628) requires that to be effective the insured must be in possession at all times of the entire evidence of the insurance contract. In Johnson, the Supreme Court stated:
"The lower courts' determination that the placement of the application in the jacket along with the certificate of insurance was an insufficient attachment for purposes of this statute was based upon decisions of this court dealing with the `entire contract policy' statutes. In our view the lower courts erred in concluding that this jurisprudence stands for the proposition that under La.R.S. 22:618 an application must be physically attached to the policy through staples, glue, paper clips, or the like.
In Spain v. Travelers Insurance Co., 332 So.2d 827 (La.1976) the question before this court was whether, under La. R.S. 22:628, an exclusionary clause in a primary policy would apply to an excess policy by virtue of a clause in the latter which stated that `The provisions of the immediate underlying policy are incorporated as a part of this policy ...'. Thus, this case did not present a question concerning what mode of attachment would be sufficient but instead dealt with the question of whether the doctrine of incorporation by reference was applicable. In rejecting this notion, this court discussed various statutes in the insurance code, one being La.R.S. 22:618, which require that applications, by-laws or other instruments be attached to the policy to be effective. The salutary purpose of these statutes is that the insured during his lifetime, and the beneficiary after the death of the insured, shall have in their possession at all times the entire evidence of the insurance contract."
In commenting on the intent of LSA-R.S. 22:618, the Johnson court further stated:
"The statute requires that the application be `attached to or otherwise made a part of the policy.' A major principle of statutory construction is that courts should interpret statutes in such a manner as to avoid unintended or absurd results. State v. Booth, 347 So.2d 241 (La. 1977); Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681 (1970); Smith v. Town of Vinton, 209 La. 587, 25 So.2d 237 (1946). By placement of the application containing the decedent's name and other essential data inside of the certificate cover in a sleeve provided for that purpose, the application was attached to or otherwise made a part of the certificate within the meaning of the statute. The purpose of the statute, to assure that the insured is in possession of the entire contract, was unquestionably fulfilled...."
The record in the present case reflects that the riders in dispute were stapled *367 to Mrs. Rozas' application for insurance coverage which was placed inside of the policy along with various endorsements pertaining to the insurance agreement existing between the parties. In addition we note that the policy introduced into evidence was obtained from plaintiff's counsel who presumably obtained the same from the plaintiff. Obviously, plaintiff had in her possession at all times the entire evidence of the insurance contract. To conclude that the riders attached to plaintiff's insurance application and placed with the policy should have no effect simply because the same was not attached to the policy by staples, paper clips, or glue would constitute an absurd and unintended result of statutory interpretation and would be clearly contrary to the holding in Johnson, supra. Thus, we conclude that in the present case, the purpose of the statute, as stated in Johnson, supra, was unequivocally fulfilled.
Plaintiff next contends that Mrs. Rozas' illness was unrelated to any "disease of the cerebro-vascular system; treatment for and complications therefrom;" and/or not attributable to "abnormal blood pressure; treatment for and complications therefrom", as provided in the exclusionary riders made a part of the insurance contract existing between the parties. We disagree. The medical testimony introduced at trial overwhelmingly establishes that the condition from which Mrs. Rozas suffered is considered a "disease of the cerebro-vascular system or complication therefrom" such as to exclude coverage under the policy in effect at the time of plaintiff's illness.
Dr. Charles Aswell, plaintiff's family physician for over thirty years, testified that in 1965 plaintiff suffered a similar subarachnoid hemorrhage which required surgical removal. Further, Aswell stated that he has treated plaintiff for mild hypertension since 1975, although he indicated that plaintiff's hypertensive condition has been effectively controlled by moderate medication and a proper diet. Aswell testified that upon examining Mrs. Rozas on October 2, 1979, he tentatively diagnosed her problem as a subarachnoid hemorrhage located at the base of the brain. When questioned regarding how he might classify plaintiff's problem, Dr. Aswell stated that plaintiff's illness was a complication of a disease of the cerebro-vascular system.
Dr. Stephen I. Goldware, the neurosurgeon who operated on plaintiff, testified that the cerebro-vascular system is composed of the blood vessels of the brain. He stated that, in his opinion, plaintiff sustained a hypertensive hemorrhage in the brain. Dr. Goldware further stated that the hemorrhage emanated from the cerebro-vascular system. In this regard, Dr. Goldware indicated that the hemorrhage came from a blood vessel or vascular structure, that burst, and thus, allowed blood to collect in the brain.
In addition to Dr. Aswell and Dr. Goldware, defendant presented two medical experts who testified regarding the classification of plaintiff's illness. Dr. Michael Carey, a professor of neuro-surgery at L.S.U. Medical School, testified that a disease of the cerebro-vascular system is when there is either abnormal structure or abnormal function of the blood vessels of the brain. Dr. Carey stated that after reviewing the plaintiff's medical records, it was his opinion that an intracerebral hemorrhage such as suffered by plaintiff resulted from a failure within the cerebral vascular system. Further, Dr. Carey indicated that such bleeding was an abnormal condition or disease of the cerebro-vascular system. Dr. Philip Castro and Dr. Edward Comer, medical consultants employed full-time by the defendant company, stated that they authorized the denial of coverage of plaintiff's illness because the diagnosis and the procedure employed to correct plaintiff's condition clearly indicated that plaintiff's illness involved the blood vessels leading to, entering, and sustaining the cerebro-vascular system of the brain. Both doctors stated that the basis for rejection of plaintiff's claim was the rider pertaining to and excluding coverage for "disease of the cerebro-vascular system; treatment for and complications therefrom".
*368 Our review of the record reveals no medical evidence controverting the factual conclusion of the trial court that Mrs. Rozas' illness was a disease of the cerebro-vascular system. Thus, we discern no clear error on the part of the trial court in so finding. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975).
Plaintiff next contends that the insurance contract issued to her is ambiguous by virtue of the provisions of the original policy and the modification of the same by the exclusionary riders. As we understand plaintiff's argument, she asserts that there is ambiguity because the original policy, absent modification, provided coverage to plaintiff for her illness, whereas the exclusionary riders, agreed upon and made a part of the insurance contract at the time of execution, preclude such coverage. It is universally recognized that insurers may vary, modify, or restrict the coverage provided by a standard form insurance policy by use of endorsements, riders, or other documents attached to such contract so long as such attachments do not conflict with statutory law or public policy. In Stacy v. Petty, 362 So.2d 810 (La.App. 3rd Cir. 1978), our court stated:
"It is well settled that an insurance policy is a contract between the insured and insurer, and as such has the effect of law on the parties. LSA-C.C. art. 1901; Fontenot v. New York Life Insurance Co., 357 So.2d 1185 (La.App. 3rd Cir. 1978, writ refused); Southern States Masonry Company, Inc. v. Mission Insurance Company, 353 So.2d 307 (La.App. 1st Cir. 1977, writ refused); Cormack v. Prudential Insurance Company of America, 259 So.2d 340 (La.App. 4th Cir. 1972, writ refused). It is equally well settled that in the absence of a conflict with statutory law or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose reasonable conditions upon their obligations. Such provisions must be given effect as written. Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La. 1974); Fontenot v. New York Life Insurance Co., supra."
We conclude that the defendant, by virtue of the exclusionary riders made a part of the insurance contract between the parties, merely limited its liability via unambiguous, clearly noticeable, and reasonable provisions which are not in conflict with statutory law or public policy. Thus, we find no clear error on the part of the trial court in its conclusion that the policy at issue was unambiguous.
Plaintiff next asserts that payment by the defendant of Dr. Goldware's bill for services rendered estops the defendant from denying liability for plaintiff's additional medical and hospital expenses. We disagree. Evidence in the record clearly indicates that Dr. Goldware's bill was paid as a result of clerical error. However, in any event, such payment would not estop Blue Cross to now refuse payment of medical expenses and hospital costs on the basis of the exclusionary riders.
As noted, plaintiff argues that payment by the defendant company of the bill submitted by Dr. Goldware for surgery, evaluation, and admission constitutes an admission of liability on the part of the defendant and estops the defendant from denying liability for plaintiff's hospital expenses arising out of the same illness.
Application of the doctrine of equitable estoppel arises when one by his actions, or by his silence when he ought to speak, induces another to believe certain facts, and the other relies on these facts to his prejudice. See LeDoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App. 3rd Cir. 1970), writ refused, 236 So.2d 501 (La.1970). The erroneous payment of Dr. Goldware's bill occurred after plaintiff became indebted to him and to the hospital for services rendered in connection with plaintiff's illness. Thus, plaintiff cannot validly argue that she incurred such hospital expenses in reliance on defendant's error *369 in paying the physician's bill contrary to the exclusionary riders precluding such payment. In addition, equitable estoppel cannot be used to enlarge or extend coverage of an insurance policy beyond that set forth in the insurance agreement. See Smith v. Republic National Life Insurance Co., 335 So.2d 739 (La.App. 2d Cir. 1976), writ denied, 338 So.2d 706 (La.1976); Hunter v. Office of Health Services, Etc., 385 So.2d 928 (La.App. 2d Cir. 1980), writ denied, 393 So.2d 737 (La.1980).
Since we have concluded that the policy in full force and effect at the time of plaintiff's illness excluded coverage for the same, we need not address plaintiff's final demand for penalties and attorney's fees since defendant's refusal to pay insurance benefits to Mrs. Rozas was not arbitrary or capricious, but rather, fully in keeping with the contract existing between the parties.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff, Mrs. Eza S. Rozas.
AFFIRMED.