487 So.2d 729 (1986)
Joseph J. MONJU, Sr. and John E. Monju
v.
CONTINENTAL CASUALTY COMPANY.
No. 85-CA-689.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
Paul S. Fiasconaro, New Orleans, for plaintiffs-appellants.
James F. Ryan, New Orleans, for defendant-appellee.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
WICKER, Judge.
This appeal arises from a suit brought by plaintiffs, Joseph J. Monju, Sr. and John E. Monju (Monju), against defendant, Continental Casualty Co. (Continental), with regard to a claim for sewerage repairs under two policies of insurance issued by Continental. The trial court found that the *730 claim was not covered under the policies and rendered judgment in favor of the defendant dismissing the plaintiffs' suit. Plaintiffs appeal the judgment rejecting their demands and assert that coverage exists. We affirm.
Plaintiffs are the owners of a two story apartment building consisting of ten apartments in Metairie, Louisiana. The building consists of five apartments on each floor. The defendant, Continental, issued building liability insurance policies on the building for the period March 29, 1980 to March 29, 1983 (No. 006-21-19-79) and for the period March 29, 1983 to March 29, 1986 (No. 07-201-99-68). Both policies contained an All Risk Property Form.
On January 31, 1981 the sewer system in one of the apartments backed up causing John Monju to contact Ostarly Sewer and Drain Service, Inc. (Ostarly). Ostarly utilized a cable to clear the line which alleviated the stoppage only temporarily. It was called thereafter for recurring complaints from May 1981 through August 1983.
Ostarly tunneled under the building in April 1982 and uncovered a broken pipe which was then repaired. Another broken pipe was suspected but it was not repaired since no difficulties were resulting from the break at the time. However, in June 1982 several apartment drains began to stop up and Ostarly returned. Because Ostarly's employees were unable to get a cable into the line it was necessary to dig under the building to make the repairs. On that occasion Ostarly found a considerable amount of water under the building, a break in the line and a separation of the pipe from the chain wall. The pipe was repaired and a bill was submitted. A month later a blockage clogged the drains again, and once more the Ostarly workmen unstopped the blockage. However, the problems kept recurring and the company continued its efforts to clear the line.
In December 1982 and January and March of 1983 Ostarly requested Drain Patrol, another sewerage and drain service company, to run a cable because Ostarly was unable to get its cable through due to other blockages in the same area. In April 1983 Ostarly returned to recheck the work which was done on the first pipe repair and noticed the line was still blocked a few feet from the line originally repaired. The Ostarly workers tunnelled under the building again and found another break.
Appellant continued to call Drain Patrol four or five times in July and August because the stoppages continued. Drain Patrol finally recommended that Mr. Monju contact Earl's Plumbing and Heating Repair. Kerry Luminais responded to the service call for that concern and began work under the building. Ultimately, a broken pipe and another separation of the pipe from the chain wall were found and repaired. No further problems occurred.
After receiving the bill from Ostarly in 1982, plaintiffs submitted a claim to defendant under their All Risk Building Insurance contract. Defendant paid the 1982 claim without conducting an investigation. Following receipt of the bill from Earl's Plumbing in 1983 in the amount of $8,531.00, a second claim was submitted to defendant. In response, defendant sent a property damage investigator to the apartment building and thereafter refused to pay the claim on the basis that the damage was not covered under either the 1980-1983 policy or the 1983-1986 All Risk Building policy.
When Continental refused to pay, the Monjus filed suit. Trial was held on February 12, 1985 and on May 22, 1985 a judgment was rendered dismissing plaintiffs' suit.
Thereafter, the Monjus' perfected an appeal of that judgment alleging that the trial court erred in failing to find coverage under policy # XXX-XX-XX-XX; that the trial court committed error in failing to find coverage under policy # XX-XXX-XX-XX; that the trial court improperly allowed defendant to assert exclusions under either policy since defendant had not pleaded the exclusions as an affirmative defense; and that the trial court should have held that defendant was estopped from denying coverage since defendant paid the first claim.
*731 The first issue raised by the Monjus is whether underground pipes are clearly excluded from coverage under either of the policies issued by Continental. In order to determine the existence of the coverage of the pipes we must examine the language contained in the policies since Louisiana law mandates that courts give legal effect to insurance contracts in accordance with the true intent of the parties. L.S.A.-C.C. Art. 1945,[1]Hebert v. First American Insurance Co., 461 So.2d 1141 (La.App. 5th Cir.1984), writ denied 462 So.2d 1265 (La. 1985). That intent is determined by the words of the contract when they are clear and unambiguous and do not lead to absurd consequences. L.S.A.-C.C. Art. 1945; Hebert, supra. However, when the words of a contract are ambiguous or the interpretation is doubtful, the language of an insurance policy is construed to provide coverage. Hebert, supra; Pomares v. Kansas City Southern Railway Co., 474 So.2d 976 (La.App. 5th Cir.1985).
In disputes involving exclusions in an insurance policy or limitations on coverage in the policy, the jurisprudence recognizes the insurance company's right to limit its liability, when the limitation or exclusion is clear and express. Hebert, supra. When an ambiguity in a contract of insurance relates to a provision limiting coverage, the general principles apply and will be liberally interpreted in favor of coverage. Pomares, supra.
While using slightly different language, the All Risk Building Form for both policies of insurance provides coverage to buildings or structures, including fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the buildings. However, under Provision C, Property Not Covered, both policies of insurance remove from coverage the following:
". . .
2. Foundations of building(s) which are below the under surface of the lowest basement floor, or where there is no basement, which are below the surface of the ground; foundations of machinery or boilers and engines which are below the surface of the ground; underground flues, pipes, wiring and drains; sidewalks or driveways; piling for building(s) or wharf property below the low water mark; including cost of excavations, grading or filling." [Emphasis added]
After reviewing the language contained in both policies we conclude that underground pipes and drains are clearly not covered by the policies. Since we find that the words of the contract are unambiguous, we hold that the trial court did not err in denying coverage under either policy.
Appellants also argue that in the event the policies exclude coverage, the appellee's failure to plead the exclusions as an affirmative defense acts as a bar to raising that defense.[2] It should be pointed out that the language relied on to deny coverage herein is not contained in the exclusions' section of the policies. Further, during the trial of this case, the Monjus produced evidence on the underground location of the damaged pipes as part of their case-in-chief. Thus, the factual basis upon which the Monjus' claim is held herein not to be covered by the policies was presented by appellants at the trial. The Monjus also failed to object to evidence produced by Continental relative to coverage. Consequently, Continental's pleadings were amended by the evidence presented to the lower court. For these reasons we are not persuaded by appellants' argument.
The final error urged by the Monjus concerns the failure of the trial court to hold appellee estopped from denying coverage since it paid the first claim. The law in Louisiana holds that equitable estoppel cannot be used to enlarge or extend coverage of an insurance policy beyond that set forth *732 in the insurance agreement. Balehi Marine v. Firemen's Ins. Co. of Newark, 460 So.2d 16 (La.App. 1st Cir.1984); writ denied 462 So.2d 654 (La.1985); Rozas v. La. Hospital Service, Inc., 413 So.2d 364 (La. App. 3rd Cir.1982); Hunter v. Office of Health Services, Etc., 385 So.2d 928 (La. App.2d Cir.1980), writ denied, 393 So.2d 737 (La.1980).
In Rozas, the plaintiff argued that the insurance company's actions in paying part of plaintiff's medical claim constituted an admission of liability which estopped the defendant from denying liability for further expenses. In rejecting the argument, the court stated that equitable estoppel arises:
"... when one by his actions, or by his silence when he ought to speak, induces another to believe certain facts, and the other relies on these facts to his prejudice." Id. at 368.
The doctrine carries with it the general implication that the pleader has been induced by the conduct or action of another to do something or follow some cause he would not otherwise have pursued. Baton Rouge Lumber Co. v. Gurney, 173 So.2d 251 (La.App.1st Cir.1965).
As occurred in Rozas, the expenses incurred by the Monjus arose prior to the payment by Continental. Further, they were necessary to the maintenance of the building and would have been incurred regardless of the insurer's conduct. Thus, we do not agree that Continental's conduct in paying the first claim bars the company from asserting its defenses to liability under the contract. Consequently, we find that the trial court did not err in failing to hold appellee estopped from denying coverage for the expenses incurred for the repair of the underground plumbing.
Accordingly, after a review of the law and evidence, the judgment of the trial court dismissing plaintiffs' suit is hereby affirmed.
Costs of appeal to be paid by appellant.
AFFIRMED.
NOTES
[1] The provisions of Article 1945 in effect during the terms of the contracts herein can now be found in LSA-C.C. Art. 2045 and 2046 effective January 1, 1985.
[2] See LSA-C.C.P. Art. 1005.