INSURANCE COMPANY OF
NORTH AMERICA

v.

WEST OF ENGLAND SHIPOWNERS
MUTUAL INSURANCE
ASSOCIATION.

Civ. A. No. 93–076.

United States District Court,
E.D. Louisiana.

July 14, 1995.

Peter L. Hilbert, Jr. and Darnell Bludworth, McGlinchey, Stafford & Lang, New Orleans, LA, for Ins. Co. of North America.

George W. Renaudin and George H. Lugrin, IV, Griggs & Harrison, Houston, TX, for Griggs & Harrison.

George Moore Gilly and Stephanie G. McShane, Phelps Dunbar, New Orleans, LA, for West of England Shipowners Mut. Ins. Ass'n (Luxenberg).

Joseph J. Weigand, Jr., Joseph J. Weigand, Jr., A.P.L.C., Houma, LA, for Best Workover Inc., Gantry Well Service, Inc., Best Oilfield Services, Inc., and Workover 300 Inc., Best Workover Inc., Gantry Well Service, Inc., Best Oilfield Services, Inc., Workover 300 Inc., Darrell Brewer, Houma, LA, pro se.

David F. Bienvenu, James R. Sutterfield, and Renee Summer Melchiode, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, LA, for Institute of London Underwriters Companies.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on motion for summary judgment by West of England Shipowners Mutual Insurance Association ("West of England"). West of England seeks a judgment declaring the protection and indemnity (P & I) insurance policy issued by West of England to Best Workover, Inc., Gantry Services, Inc., Best Oilfield Services, Inc. and Workover 300, Inc. (collectively the "Best entities") null and void *ab initio*. West of England also moves for dismissal of Insurance Company of North America's ("INA's") claims against West of England based on the asserted nullity of the P & I policy. Finally, West of England seeks summary judgment against INA for sums expended by West of England in defense and settlement of claims brought against the Best entities.

In a cross-motion for summary judgment, INA seeks to recover from West of England all amounts it paid to the Best entities, arguing that it excluded coverage for claims covered by a P & I policy, such as West of England's. For the reasons that follow, the motion of West of England is denied, and the motion of INA is granted in part and denied in part.

## I. BACKGROUND

For the years November 30, 1989 to November 30, 1991, the Best entities obtained $1,000,000 in P & I insurance from West of England covering the Barge REBSTOCK NO. 3. The Best entities also obtained workers' compensation and employers' liability insurance from INA for the years August 1, 1990 to August 1, 1992. INA provided maritime coverage of up to $25,000 per accident. INA's policy excluded coverage for any "bodily injury covered by a Protection and Indemnity Policy." INA Motion for Summary Judgment ("INA Motion") at 2, Maritime Coverage Endorsement to Policy.

During its policy periods, West of England paid for the defense and settlement of several personal injury claims asserted against the Best entities in the approximate amount of $600,000. West of England claims that it made the defense and settlement payments by mistake before it discovered that its insured had made material misrepresentations as to the number of crew that would operate the Barge REBSTOCK NO. 3. A "cover

note" to the West of England policy contains a "Schedule of Vessels" which lists the "REBSTOCK NO. 3" and under the heading "Crew," the number "4." *See* Ex. C to INA Motion, West of England Policy. West of England claims that upon discovering that the REBSTOCK NO. 3 was manned by a crew of more than four people, it denied coverage and a defense with respect to ongoing claims.

INA also paid certain claims filed by employees of the Best entities who were injured on the Barge REBSTOCK NO. 3. INA claims that it made these payments only because it was unaware of the P & I coverage afforded by West of England. INA Motion at 3. INA learned that the crew of the Barge REBSTOCK NO. 3 was covered by P & I insurance in October 1991. Thereafter, INA made demand upon West of England to reimburse INA for the amounts paid, asserting that its policy excluded claims covered by P & I insurance. West of England refused payment.

INA thereafter filed this litigation against West of England for reimbursement. West of England answered the complaint, filed a third-party demand against certain London underwriters that provided excess maritime liability coverage, and filed a counterclaim against INA to recover the approximately $600,000 paid by West of England during its policy period. West of England now seeks summary judgment against INA for the $600,000 plus a declaration that it has no liability to INA because the P & I policy issued to the Best entities is void *ab initio*.

INA filed a cross motion for summary judgment on its claim for reimbursement against West of England. In support of this recovery, INA asserts that West of England's policy is not invalidated by any alleged misrepresentations. INA also claims that it is entitled to reimbursement because it paid claims that were subject to exclusion by virtue of the coverage afforded by West of England's P & I policy.

## II. ANALYSIS

### A. West of England's Motion

#### 1. Voiding the Policy

West of England argues that its policy is void *ab initio* because in the placement and renewal of its P & I insurance policies, the Best entities represented in 1989 and in 1990 that the Barge REBSTOCK NO. 3 would be operated by a crew of four people, when in fact, the barge was operated by a larger crew. West of England claims that it would not have agreed to accept the risk or to issue the policies at the premiums charged if the insured had provided correct information. West of England Motion at 6. West of England argues that federal maritime insurance law, particularly the doctrine of *uberrimae fidei*, governs the effect of Best's misrepresentations. *Uberrimae fidei* means "[t]he most abundant good faith; absolute and perfect candor or openness and honesty; the absence of concealment or deception, however slight." *Black's Law Dictionary* 1362 (5th ed.1979). This principle operates to invalidate marine insurance contracts when there is evidence of material misrepresentations by the insured. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir.1991).

■ The law is clear that in the absence of a specific and controlling federal rule, the interpretation of a contract of marine insurance is to be determined by application of the appropriate state's law. *Ingersoll–Rand Financial Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir.1985). In *Albany, supra*, the Fifth Circuit considered whether state law or the federal maritime law doctrine of *uberrimae fidei* governed the validity of marine insurance contracts when an insurer sought to void a contract on the basis of material misrepresentations. The Court identified three factors that are relevant to determining the applicable law: 1) whether the federal maritime rule constitutes "entrenched federal precedent," 2) whether the state has a substantial and legitimate interest in the application of its law, and 3) whether the state's rule is materially different from the federal maritime rule. *Albany*, 927 F.2d at 886 (citations omitted). Finding that the doctrine of *uberrimae fidei* is not "entrenched federal precedent," the Fifth Circuit ruled that the federal maritime principle did not override state law, even though the state law in issue required an intent to de-

ceive the insurer in order to void a policy of insurance, and the federal maritime law did not. *Id.* at 887. *Albany* controls the facts of this case and mandates the application of state law to determine the validity of the Best entities' P & I policy. Although West of England argues that *Albany* is an aberration that should be disregarded, this Court is bound by its ruling.

■ Louisiana law is the obviously applicable state law since the INA and West of England policies were provided to a Louisiana insured in the State of Louisiana. Louisiana law, unlike the doctrine of *uberrimae fidei*, only invalidates an insurance contract on the basis of the insured's material misrepresentation if the misrepresentation is made with the *intent to deceive.* La.R.S. 22:619(A).[1] Louisiana jurisprudence requires the insurer to establish both the intent to deceive and that the misrepresentation materially affected the risk undertaken by the insurer. *Perault v. Time Ins. Co.,* 633 So.2d 263 (La.App. 1st Cir.1993), *writ denied,* 634 So.2d 833 (La.1994); *Jamshidi v. Shelter Mutual Ins. Co.,* 471 So.2d 1141 (La.App.3d 1985).

■ West of England claims that intent to deceive is demonstrated by the Best entities' failure to report that the number of crew exceeded four, despite numerous requests for such notification. However, neglect in reporting does not automatically indicate deceitful intent. Darrell Brewer, the president of Best Workover, Inc., testified that he told Sedgewick James, an insurance broker, that from time to time there would be more than four men aboard the Barge REBSTOCK NO. 3. Ex. W to INA Motion, Brewer Depo. at 76–77. On the other hand, Ron Grieshaber, the insurance broker's representative, stated that it was his understanding from Darrell Brewer that there would not be more than

four workers on the barge at any one time. Ex. K to West of England Motion, Grieshaber Depo. at 30–32. The conflicting testimony reveals disputed issues of fact that preclude summary judgment on the issue of the Best entities' intent to deceive. Therefore, West of England's motion seeking to void the P & I policy issued to the Best entities for the REBSTOCK NO. 3 must be denied. Similarly, West of England is not entitled to have INA's reimbursement claims against it dismissed on summary judgment, since that motion was also premised on the nullity of its P & I policy.

### 2. West of England's Recovery

#### a. Conventional Subrogation

■ West of England also seeks to recover from INA approximately $600,000 it has paid on behalf of the Best entities. The Court asked West of England to set forth the basis for this cause of action against INA. West of England responded in its Second Supplemental Memorandum that it was conventionally and legally subrogated to the rights of its insured, the Best entities. Subrogation takes place in favor of a third person who pays the debt of another only when provided for by contract or law. *Martin v. Louisiana Farm Bureau Casualty Ins. Co.,* 638 So.2d 1067 (La.1994). West of England's P & I policy contains a subrogation clause that subrogates it to the insured's rights against "any other person" for any payment made under the policy.[2] Although the clause would subrogate West of England to its insured's rights against INA, if any, West of England's reliance on the subrogation clause is inconsistent with its claim that the policy is void *ab initio.* However, since an issue of fact as to the nullity of the P & I policy precludes summary judgment in favor of

---

1. La.R.S. 22:619(A) provides:

 [N]o oral or written misrepresentation of a warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching unless the misrepresentation or warranty is made with the intent to deceive.

2. The subrogation clause in West of England's P & I policy states as follows:

 Subrogation. The Assurers shall be subrogated to all the rights which the Assured may have against any other person or entity, in respect of any payment made under this policy, to the extent of such payment, and the Assured shall, upon the request of the Assurers, execute all documents necessary to secure the Assurers such rights.

West of England on that issue, West of England is not entitled to summary judgment on its conventional subrogation claim against INA.

### b. Legal Subrogation

■ West of England also claims that it is entitled to legal subrogation under La.Civ. Code art. 1829(3), as interpreted by the Louisiana Supreme Court in *Aetna Ins. Co. v. Naquin,* 488 So.2d 950 (La.1986).[3] Article 1829(3) provides that subrogation, absent conventional reservation, takes place "in favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment." Legal subrogation under Article 1829(3) "is an exception to the general rule that subrogation does not take place when a third person pays the debt of another.... Due to the exceptional nature of subrogation by operation of law, the right is strictly construed." *Martin,* 638 So.2d at 1068.

West of England's right to legal subrogation depends, first and foremost, upon its duty to pay the amounts it paid to employees of the Best entities. This follows because La.Civ.Code art. 1829(3) requires that the payor be an *"obligor* who pays a debt *he owes* with or for others." La.Civ.Code art. 1829(3) (emphasis added). If the P & I policy is void *ab initio,* West of England had no obligation to pay the claims of Best Workover's employees; it did not *owe* anything. The requirement that the payor seeking subrogation have paid under an obligation is clearly expressed in the Code article and the jurisprudence. *See Naquin,* 488 So.2d at 954 ("Aetna, having paid a debt [for] which they were *bound* with Naquin, is entitled to be legally subrogated.") (emphasis added); *Dietrich v. Travelers Ins. Co.,* 509 So.2d 49, 51 (La.App. 1st Cir.1987) ("Roy & Kiesel ... would then be in the position of having paid a debt for which they were *legally bound* with another, and would be legally subrogated to Ms. Dietrich's claim.") (emphasis added). If West of England's policy is voided, it will have paid without an underlying obligation, and legal

subrogation will not apply. Any claim for legal subrogation, therefore, must stem from a valid P & I policy. Given the unresolved status of West of England's P & I policy, it is not entitled to summary judgment against INA on a legal subrogation theory. Further, it should be noted that, to the extent West of England could be subrogated to its insured's rights, it would have no greater rights against INA than its insured did. Thus, if INA can invoke its P & I exclusion against a claim by West of England's insured, it could also assert that exclusion against West of England.

### B. INA's Motion for Summary Judgment

INA moves for summary judgment dismissing West of England's counterclaim for approximately $600,000 against it on the basis of waiver or estoppel. Additionally, INA seeks summary judgment for all payments it made to the Best entities for claims that were covered by West of England's P & I insurance.

#### 1. Waiver or Estoppel

INA asserts that West of England is estopped from recovering against INA because it knew that the Barge REBSTOCK NO. 3 was operated by a crew of more than four persons and continued to pay claims and expend defense costs. In a supplemental memorandum requested by the Court, INA detailed the information received by West of England that it claims should have indicated that the Barge REBSTOCK NO. 3 was operated by more than four people. Attached to INA's supplemental memorandum is an affidavit of John Kefford, an employee in West of England's claims department from 1992 to the present, which states that he received the documents discussed below.

In September 1992, Kefford received a letter from E.J. Halverson & Associates, Inc. dated February 17, 1992, together with its enclosures. Ex. X to INA First Supplemental Memo., Kefford Affirmation at 1. The letter lists *four crew members* of the Barge

---

**3.** In *Naquin,* the Supreme Court actually interpreted former La.Civ.Code art. 2161(3), the predecessor to Article 1829(3), which tracks its language. *See Coates v. AC and S, Inc.,* 844 F.Supp. 1126, n. 15 (E.D.La.1994).

REBSTOCK NO. 3 who were working *with* claimant John Belle on the date of his accident, for a total of five crew members. Ex. G to INA Motion. Additionally, West of England's claims department, through Kefford, received a letter dated April 29, 1992 from E.J. Halverson & Associates, Inc. stating as follows:

> On February 22, 1991 Boudloche was a tool pusher on Best Rig # 3. As a tool pusher, he was responsible for *two four-man crews.* One four-man crew worked during the night, and another four-man crew worked during the day.

Ex. X to INA Motion, Kefford Affirmation at 1, *citing,* Ex. I to INA Motion (emphasis added). This letter clearly indicates that more than four crew members worked on the barge.

On October 19, 1992, West of England, through Kefford, received a letter from the law firm, Burke & Mayer, that stated:

> In November 1991, Best Oilfield was working for Phillips Petroleum in Bastion Bay. They were conducting work over operations. The crew consisted of driller Bunnell, derrick man Dale Johnson, floorhands Timmy Bayles and Frank Montgomery, crane operator Melvin Beck, roustabout Jimmy Brown, and the contract toolpusher, Johnny Womack.

Ex. X to INA Motion, Kefford Affirmation at 4, *Citing,* Ex. O to INA Motion.

These letters clearly indicate that claimants John Belle and Frank Montgomery worked on the Barge REBSTOCK NO. 3 with a crew of more than four persons. West of England's claims department received these documents in September and October of 1992. Nevertheless, West of England settled the Belle claim on December 31, 1992 for $350,000 and the Montgomery claim on December 14, 1992 for $50,000, without reserving its rights to assert the invalidity of the policy.

INA claims that the payment of defense and settlement costs despite information sufficient to put West of England on notice of misrepresentations regarding the REBSTOCK's crew constitutes waiver of any ground for invalidating the P & I policy.

"[W]hen an insurer with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such a policy defense." *Steptore v. Masco Const. Co., Inc.,* 643 So.2d 1213 (La.1994); *Peavey Co. v. M/V ANPA,* 971 F.2d 1168 (5th Cir.1992). The Louisiana Supreme Court in *Steptore* held that an insurer waived its right to assert the coverage defense of the insured's breach of warranty when it assumed and continued the defense of the insured despite knowledge that the insured barge was not kept at the location indicated in the policy. There was evidence in *Steptore* that the insurer knew or should have known that the barge was not at its designated location at the time the accident in issue occurred. The court held that by appointing lawyers to defend the insured barge owner and continuing the defense for six months, the insurer waived its right to deny coverage based on breach of warranty. Relying on *Steptore,* INA asserts that West of England waived its right to void the policy because it knew or should have known that the crew exceeded four people.

■ West of England claims that INA, as a third party to the insurance contract, lacks standing to assert waiver. INA, on the other hand, claims to be subrogated to the rights of the Best entities by virtue of having paid claims on their behalf. The Court agrees that if INA is subrogated to the rights of its insured, these rights would include the Best entities' right to assert waiver of West of England's misrepresentation defense.

The same subrogation analysis discussed above with respect to West of England applies here. Payment by a third party only effects subrogation when provided for by contract or law. INA does not argue that it is *legally* subrogated to the rights of the Best entities. Indeed, INA could not assert legal subrogation under La. Civ.Code art. 1829 because, based on the policy exclusion for accidents covered by a P & I policy, INA was not legally obligated to pay the settlements for which it now seeks reimbursement. *See, supra,* discussion at 9.

INA asserts that it is conventionally subrogated to the rights of its insured. INA's policy contains two subrogation clauses, both of which give it the insured's rights to recover payments from third parties. Ex. A to INA's Motion, INA Policy Jacket, Part 2, ¶ H and Part 1, ¶ G.[4] For purposes of its assertion of waiver by West of England, the distinction between the two subrogation clauses is unimportant. Therefore, to the extent that INA has paid claims on behalf of the Best entities, it stands in the shoes of the Best entities and has standing to raise the claim that West of England waived its right to assert the invalidity of the P & I policy.

 West of England also argues that *Steptore* does not apply to the Best entities' alleged material misrepresentation. West of England claims that *Steptore* is distinguishable because it involved breach of warranty, which can be waived, whereas this case involves material misrepresentations as to the scope of coverage, which West of England asserts cannot be waived. It is true that there is authority for the proposition that conditions of an insurance policy that concern the coverage or the scope of coverage cannot be waived, whereas grounds for forfeiture of the policy can be waived. *C.E. Carnes & Co. v. Employers' Liability Assur. Corp.*, 101 F.2d 739 (5th Cir.1939). However, West of England has mischaracterized the nature of the alleged misrepresentation involved here. A review of West of England's policy reveals that it did not expressly condition coverage on a particular number of crew members. The policy mentions the number of crew members only once when the numeral "4" was typed under the heading "Crew" on a cover note attached to the policy. *See* Ex. C to INA Motion, West of England Policy. The policy does not state that the scope of coverage is limited to four crew members or that it was conditioned on there being no more than four crew members. *Cf. FDIC v. Duffy*, 47 F.3d 146 (5th Cir.1995) (assuming misrepresentation that there were no "prior acts" subject to coverage by the policy was waivable by the insurance company). While it is true that a statement as to the number of crew members can impact the risks insured, the same is true with a warranty that a ship will be in a certain location, which was held subject to waiver in *Steptore*. The Court therefore holds that a material misrepresentation as to the number of crew members is a grounds for forfeiture of the policy. Accordingly, the asserted misrepresentation was subject to waiver by West of England.

 Waiver occurs when there is an existing right, knowledge of its existence, and an actual intention to relinquish the right or conduct so inconsistent with the assertion of the right as to indicate that the right has been relinquished. *Steptore v. Masco Construction Co.*, 643 So.2d 1213, 1216 (La.1994) (citations omitted). The Louisiana Supreme Court in *Steptore* further explained that "notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered." *Id.* (citations omitted). The three letters received by the West of England claims department through John Kefford before it paid claims are sufficient to have put West of England on notice that the Barge REBSTOCK NO. 3 had been operated by more than four crew members.

 West of England admits that with respect to the claims of Todd Boquet, Howard Beck and John Belle, its claims files

---

**4.** Part 1 of INA's policy contains the following subrogation clause:

> We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us to enforce them.

Ex. A to INA Motion for Summary Judgment, Policy Jacket, Part 1, ¶ G.

Part 2 of INA's policy contains a different subrogation clause that states:

> We have your rights to recover our payment from anyone liable for an injury *covered by* this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

*Id.*, Part 2, ¶ H (emphasis added).

The distinction between the two subrogation clauses affects INA's right to *recover*, by conventional subrogation, amounts it paid in settlement of claims covered by the P & I policy, but does not affect INA's *standing* to assert waiver. The distinction is discussed *infra* at 1311.

contain information indicating that these claimants worked on crews of more than four persons. However, it contends that since the claim files of Billy Peveto and Johnny Griffin contain no information about the number of crew at the time of their accidents, waiver should not apply to bar recovery of amounts paid on those claims. In support of this argument, West of England cites *Monju v. Continental Casualty Co.*, 487 So.2d 729 (La. App. 5th Cir.1986). The Louisiana appellate court in *Monju* considered the waiver of an exclusion of liability under a property insurance policy. The insurer had paid one claim that was covered by an exclusion without an adequate investigation. Thereafter, the insured submitted another claim. Upon investigation, the insurer found that the claim was subject to a policy exclusion and denied coverage. The insured sued, alleging that the insurance company's payment in one instance prevented the subsequent assertion of the policy exclusion. The appellate court affirmed the trial court's ruling that the insurer was not estopped from denying coverage by paying one claim covered by the exclusion. The court stated, "The law in Louisiana holds that equitable estoppel cannot be used to enlarge or extend coverage of an insurance policy beyond that set forth in the insurance agreement." *Id.* at 732.

West of England's position is different from the insurer in *Monju*, and for this reason *Monju* is inapposite. Here, West of England is not relying on a policy exclusion to avoid coverage on a claim-by-claim basis. Rather, it claims that its policy was void from the outset and provided no coverage at all for any of the claims at issue. Therefore, a finding of waiver in this case does not operate to extend or enlarge coverage to areas that would have been subject to a policy exclusion. Rather, a finding of waiver operates here to avoid *forfeiture* of the policy, which is an all-or-nothing proposition. The P & I policy is either void *ab initio*, or it is valid. It would be logically inconsistent to find the policy void *ab initio* as to some claims and not as to others. Rather, waiver is coextensive with the scope of the claim waived.

Moreover, West of England learned of the Peveto and Griffin claims in a letter dated November 26, 1991, which informed it of all the claims now in issue. The letter indicated that 11 claims had been filed in a period of 12 months by 11 different crew members of the Barge REBSTOCK NO. 3, which was allegedly supposed to have a crew of only 4 members. Ex. F to INA Motion. The Peveto and Griffin incidents occurred on the Barge REBSTOCK NO. 3 during the same time period that it was manned by a crew of more than 4, as West of England discovered. West of England had sufficient knowledge to form the basis of a finding of waiver as to these claims. For these reasons, West of England's contention that it only waived defenses to the policy with regard to certain claims is untenable. Based on the information West of England concedes it received prior to the payment of claims, West of England's payment of settlement amounts despite notice of this information, represents waiver by West of England of misrepresentations concerning the number of crew members as a ground for voiding the policy.

### 2. INA's recovery

#### a. Waiver

INA urges that since its policy excluded coverage for claims covered by P & I insurance, it is entitled to recover the amounts it mistakenly paid to the Best entities from West of England.[5] INA asserts two grounds for its recovery against West of England. First, it claims that it is conventionally subrogated to the rights of the Best entities to recover under West of England's P & I policy with respect to at least some of the claims that it paid. Second, INA asserts that its payment of claims covered by the exclusion constitutes a payment of the debt of

---

5. The maritime coverage endorsements in INA's policies contain the following exclusion:
 This insurance does not cover:
 8. Bodily injury covered by a Protection and Indemnity Policy or similar policy issued to you or for your benefit. This exclusion applies even if the other policy does not apply because of an other insurance clause, deductible or limitation of liability clause or any similar clause.
 Ex. A and B to INA Motion.

another by mistake under La.Civ.Code art. 2310.

██ West of England argues that INA waived the policy exclusion by settling claims covered by P & I insurance. INA submits that, at the time it made payments covered by the exclusion, it had no knowledge that the Best entities had obtained P & I coverage. INA asserts that it did not learn of the existence of the P & I coverage until early October 1991. "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Tate v. Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1374 (La.1987).

West of England contends that INA was put on notice of the applicability of the exclusion by a petition filed by claimant Johnny Griffin, which indicates that his accident occurred on a vessel owned by the Best entities, but does not mention P & I insurance.[6] West of England does not demonstrate when INA received this petition. West of England also relies on a letter by counsel dated September 27, 1991, which discussed the accident on the barge but did not mention P & I coverage. The letter was not stamped received by the insurer until October 3, 1991. INA demanded reimbursement for the claims in issue, except Griffin's claim, in October 1991, and there is no record evidence that it learned or should have learned of the P & I coverage sooner than October 1991. West of England's waiver argument on these claims thus fails. As to the Griffin claim, West of England has presented no evidence as to when INA paid this claim to support a waiver argument. In any event, as discussed *infra*, the Court finds that INA has no subrogation rights to recover for the Griffin claim.

**b. Subrogation**

INA asserts that it is conventionally subrogated to the rights of its insured to recover

payments it made under its workers' compensation policy. Part 1 of INA's policy provides workers' compensation insurance. It contains the following subrogation clause:

> We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us to enforce them.

Ex. A to INA Motion for Summary Judgment, Policy Jacket, Part 1, ¶ G.

██ INA also provides employers' liability coverage to the Best entities in part 2 of its policy. Part 2 contains a different subrogation clause, which states as follows:

> We have your rights to recover our payment from anyone liable for an injury *covered by* this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

*Id.*, Part 2, ¶ H (emphasis added). INA cannot rely on the foregoing clause to establish its right of subrogation because it contends that the claims it paid were not *covered by* its policy, based on the P & I exclusion.

██ However, the subrogation clause applicable to the workers' compensation claims does not limit subrogation rights to claims paid by INA that were *covered by* its insurance. INA asserts, and West of England does not dispute, that the only claim for which it seeks reimbursement from West of England that was filed against INA's employers' liability policy is the claim of Johnny Griffin, for which INA paid $13,000.00. Therefore, except as to the Griffin claim, INA is conventionally subrogated to the rights of its insured to the extent that INA has paid.

**c. Article 2310**

██ INA asserts that it can still recover the amount it paid to settle the Griffin claim

---

6. The petition is insufficient to put INA on notice of the applicability of the exclusion, however, because the occurrence of an accident on a vessel does not trigger the exclusion. Rather, the exclusion is triggered by the existence of a P & I policy covering the accident. *See supra*, note 6,

INA P & I exclusion. The petition is silent with regard to P & I coverage; it merely lists "XYZ Insurance Company," a fictitious entity as a defendant. Without more, this is insufficient to put INA on notice to inquire into the existence of a P & I policy.

under La.Civ.Code art. 2310, which provides as follows:

> He who, through mistake has paid the debt of another to whom he believed himself indebted, has a claim to restitution from the creditor.

> This right ceases, if, in consequence of the payment, the creditor has destroyed or parted with his title; but the recourse still remains against the true debtor.

To recover under Article 2310, a plaintiff must establish: 1) the existence of a debt; 2) that he paid the debt; 3) that the debt was owed by another; and 4) that the payment was made by mistake. *Continental Service Life and Health Ins. Co. v. Grantham,* 811 F.2d 273 (5th Cir.1987). In this case, INA paid the debt of its insured to the creditor—Johnny Griffin—by mistake. Article 2310 provides a right of action for restitution against the creditor, Johnny Griffin. Here, INA has not sued Griffin, but seeks to recover from West of England, as the "true debtor." However, West of England is not the "true debtor" whose debt INA paid under article 2310 because INA was not under the mistaken belief that it was indebted to West of England. *See DeVillier v. Highlands Ins. Co.,* 389 So.2d 1133 (La.App. 3d Cir.1980) (another insurer is not "true debtor" under article 2310). The article expressly applies to one "who, through mistake has paid the debt of another *to whom he believed himself indebted.*" INA mistakenly believed it was indebted to its insured.

Further, even if West of England were the "true debtor," INA has provided no evidence that the creditor has parted with or destroyed the settlement amounts paid by INA, a prerequisite to a suit against the true debtor under the second paragraph of Article 2310. As a Louisiana appellate court explained in *A.V. Smith Construction Co., Inc. v. Maryland Casualty Co.,* 422 So.2d 697 (La.App. 3d Cir.1982), "[t]he second paragraph of this article [2310] recognizes a quasi-contract between the person who paid by mistake and the true debtor, *provided the creditor who received payment has destroyed or parted with his title.*" *Id.* at 699 (emphasis added). Since INA has provided no evidence to show that Johnny Griffin had de-

stroyed or parted with the amount he received from INA, the second paragraph of Article 2310 is unavailable to INA.

### 2. Amount of Recovery

INA is entitled to reimbursement from West of England through conventional subrogation to the rights of its insured, the Best entities. INA is only subrogated to the extent that it has paid. Additionally, INA stands in the shoes of the Best entities and has no greater rights against West of England than its subrogee had. Therefore, INA's recovery from West of England is limited to that amount that the Best entities could recover from West of England.

West of England's P & I policy contains a $5,000 deductible per claim. West of England Supplemental Memo, Ex. C, P & I Policy, Endorsement No. 1. This deductible applies to limit INA's recovery to the amounts it paid over $5,000.00 as to each claim.

Further, West of England argues that INA paid workers' compensation benefits, which were excluded under West of England's P & I policy, which provided only maintenance and cure benefits. Therefore, West of England argues that, at least with respect to the claim of Todd Boquet, it is not liable for full reimbursement, but only for those amounts that represent maintenance and cure. INA paid Boquet a total of $27,062.45—$16,950.46 in medical expenses and $10,549.70 (approximately $282 per week) in state compensation. The worker's compensation, according to West of England, was based on a percentage of Boquet's prior earnings. West of England claims that its maintenance payments would have been only $17.00 per day for the thirty-seven weeks that INA paid benefits, based on the cost of the seaman's maintaining himself ashore at a standard of living comparable to that which he maintains while at sea. Therefore, West of England argues that it owes INA only the $16,950.46 for medical expenses and $4,403.00 in maintenance, for a total of $21,353.46, from which the $5,000.00 deductible must be subtracted.

INA states that Boquet presently has a claim pending in Louisiana Sate Court for Jones Act damages, including past lost wages for the period during which INA paid compensation benefits. INA submits that any past lost wages awarded will exceed what INA paid to Boquet. Therefore, INA contends that West of England's liability is not likely to be less than the reimbursement claimed by INA. INA also points to authority to support its recovery of items of Jones Act damages West of England owes to Boquet that bear a reasonable relationship to losses that INA paid under its compensation policy. *Ditmore v. Fairfield Industries, Inc.,* 855 F.Supp. 187, 192 (S.D.Tex.1994).

The Court finds that INA is entitled to reimbursement in the amount of $16,950.46 for medical expenses on the Boquet claim, that the $5,000 deductible is applicable, but that issues of fact preclude summary judgment for the additional reimbursement claimed by INA regarding its payments to Mr. Boquet.

West of England has not raised specific disputes with regard to the amount owed as reimbursement for claims other than the Boquet claim. As noted, however, INA has no cause of action for recovery of the Griffin claim because neither subrogation nor Article 2310 is applicable. INA claims that it paid $10,838.20 on the Peveto claim and $27,062.45 on the Boquet claim. There is no suggestion that the amount that INA paid on the Peveto claim exceeds the amount for which West of England would have been liable. Therefore, INA is entitled to reimbursement for the amount it has paid above the $5,000 deductible for this claim. Since INA paid less than $5,000 each on the Belle, Fisher, Beck and Gautreaux claims, no reimbursement is due on these claims. Accordingly,

IT IS ORDERED that the motion by West of England for summary judgment is DENIED.

IT IS FURTHER ORDERED that the motion by INA for summary judgment is GRANTED in part and DENIED in part.